O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

Present: The Honorable Philip S. Gutierrez, United States District Judge

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):      Attorneys Present for Defendant(s):

Not Present      Not Present

**Proceedings:**    (In Chambers) Order Denying Danny Pang's Motion to Remove Robert P. Mosier as Receiver in This Case

    Pending before the Court is Danny Pang's Motion to Remove Robert P. Mosier as Receiver in this Case. The Court heard oral argument on this matter on June 29, 2009. After considering the moving and opposing papers, as well as all oral argument, the Court DENIES the Motion to Remove.

I.      Background

    This Motion arises out of an action filed by plaintiff Securities and Exchange Commission (the "SEC") against defendants Private Equity Management Group, Inc. ("PEMG, Inc."), Private Equity Management Group, LLC ("PEMG") (collectively, "PEMGroup"), and Danny Pang ("Pang", and with the entity defendants, "Defendants"). The factual and procedural background of this case is set forth more fully in a prior opinion concerning whether the Court should grant the SEC's application for preliminary injunction, familiarity with which is assumed.

    On April 27, 2009, the Court granted the SEC's ex parte application for Temporary Restraining Order ("TRO" or the "Order"). Then, on May 6, 2009, the court-appointed receiver in this case, Robert P. Mosier (the "Receiver"), filed his First Status Report ("FSR") with the Court. In the FSR, the Receiver made a number of observations. For example, he stated that Pang "appears to have launched a personal and corporate spending spree that resulted in accelerated depletion of Tranche cash reserves," that he "treated the new monies coming into the Tranches like his personal piggy bank," and his "spending of the Investors' money has been out

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

of control, affording him a lifestyle that only the richest individuals enjoy." *FSR* ¶¶ 6-7. He also concluded that Pang had, among other things, "breached his fiduciary duty at nearly every juncture." *Id.* at ¶ 7.

Believing that the FSR, as well as many other instances of conduct, demonstrate that the Receiver has been acting improperly and that he is biased toward the SEC, Pang has filed the present Motion, in which he makes the following requests. First, that the FSR be stricken from the record. Second, that Robert P. Mosier be removed as the receiver and a new, objective receiver acceptable to both parties be appointed. And, third, that the Court's preliminary injunction[1] be amended to (1) prohibit the Receiver from rendering public comments or from making any findings of fact or opining as to conclusions of law without the express written consent of the Court; (2) to require that any court filings by the Receiver be served first upon the parties and that the parties be provided at least three business days notice to request that all or any portion of said report be filed under seal. If either party requests that any portion of the report be filed under seal, the Receiver must submit that portion of the report to the Court, under seal, in order to allow the Court to rule on any objections filed by either party; and, (3) to provide equal access to information to all parties and to refrain from engaging in ex parte communications with either party to the litigation or from excluding one party from any meetings or interviews that may be conducted by the Receiver, or his agents, investigators or attorneys.

II. Discussion

According to Pang, the Court should strike the FSR because the Receiver exceeded his authority in issuing it. Pang also argues that the Court should remove the Receiver from his appointed position because of his alleged improper behavior and bias in favor of the SEC. Lastly, Pang seeks the amendment of the preliminary injunction to ensure that a future receiver does not commit the same indiscretions that were allegedly committed by the Receiver in this case. However, before turning to the merits of these arguments, the Court believes it is first appropriate to review exactly what a receiver is and what his duties are.

A. Overview on Equity Receiverships

---

[1] On July 2, 2009, the Court granted the SEC's application for preliminary injunction, thereby extending the aforementioned TRO into a preliminary injunction.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

A court-appointed receiver is "appointed on behalf and for the benefit of all the parties having an interest in the property, not for the plaintiff or defendant alone." *N. Am. Broad., LLC v. United States*, 306 Fed. Appx. 371, 373 (9th Cir. 2008); *see also Booth v. Clark*, 58 U.S. 322, 331, 15 L. Ed. 164 (1854) ("A receiver is an indifferent person between parties . . . . He is appointed in behalf of all parties, and not of the complainant or of the defendant only."). This is why courts consider a receiver to be "an officer of the court." *See Booth*, 58 U.S. at 331; *In re San Vicente Med. Partners, Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992). As such, the receiver has no powers except such as are conferred upon him by order of his appointment and the course and practice of the court. *Booth*, 58 U.S. at 331.

Several principles can be gleaned from a review of case law involving district court administration of equity receiverships. For instance, "[i]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) (citing *SEC v. Lincoln Thrift Association*, 577 F.2d 600, 606 (9th Cir. 1978)). Also, the Ninth Circuit has repeatedly recognized "that as part of courts' equitable powers under the Securities Acts of 1933 and 1934, [they] may impose receiverships in securities fraud actions to prevent further dissipation of defrauded investors' assets." *SEC v. Wencke*, 783 F.2d 829, 837 n.9 (9th Cir. 1986); *see also Hardy*, 803 F.2d at 1038 ("[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors.").

Having reviewed equity receiverships, it is now appropriate to consider Pang's three requests.

    B.    <u>Whether the Court Should Strike the FSR</u>

Both parties apparently agree that Paragraph VI.E of the TRO (now the preliminary

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

injunction) granted the Receiver authority to issue the FSR.[2]  What the parties appear to disagree over is whether in issuing the FSR, the Receiver exceeded the scope of his authority.

It is Pang's position that the Receiver did indeed transcend his authority.  Pointing to the plain language of the TRO, Pang argues that by allowing the Receiver to "make an accounting," the Court granted the Receiver authority to make quantitative, and only quantitative, assessments.  Thus, qualitative statements, such as Pang "appears to have launched a personal and corporate spending spree," and Pang "treated the new monies coming into the Tranches like his personal piggy bank," *see FSR* at ¶¶ 6-7, should not have been included in the FSR.  The same holds true, according to Pang, with respect to legal conclusions, such as "Pang has breached his fiduciary duty at nearly every juncture." *Id.* at ¶ 7.

The Receiver, however, believes that qualitative statements and legal conclusions were within the authority granted to him.  Citing to *United States v. Amodeo*, 44 F.3d 141 (2d Cir. 1994), he argues that it was necessary for him to perform qualitative analyses to bring important matters to the Court's attention.  Moreover, the Receiver argues, as evidenced by two reports submitted by receivers in other actions, "the use of qualitative statements to convey to the Court the status of the receivership estate are [sic] both common and appropriate."[3]

The Receiver's second argument is unavailing.  Simply because two other receivers in two other cases acted one way does not necessarily mean that it is appropriate to act in that way.

---

[2]In relevant part, Paragraph VI.E grants the Receiver authority to

> make an accounting, as soon as practicable to this Court and the Commission of the assets and financial condition of Private Equity Management Group, Inc. and Private Equity Management Group, LLC and the assets under their management, including all notes, deeds of trust and other interests in real property, and to file the accounting with the Court and deliver copies thereof to all parties.

*TRO*, ¶ VI.E.

[3] As support for this conclusion, the Receiver cites to two newspaper articles.  The first article, which was published in the Los Angeles Times, includes a statement that a receiver's status report concluded that "'the operations of FS and Ohana contain the elements of a classic Ponzi scheme.'"  *See* Request for Judicial Notice ("RJN"), Ex. 1.  The second article, which comes from the Union-Tribune, provides the following quotation from a receiver: "This is not an investment gone bad. . . . This is a crime scene."  *Id.*, Ex. 2.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

After all, while repetition of conduct may eventually support a finding that the conduct at issue is "common," the question of appropriateness is an altogether different inquiry, one which can only be answered by referencing the grant of authority to the receiver. *Booth*, 58 U.S. at 331 ("The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court . . . ."); *see also Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 836 (9th Cir. 2006) (noting that the scope of the receiver's authority is determined by the authority granted to him by the supervising court).

However, the Court is persuaded by the Receiver's first argument. As the Second Circuit noted in *Amodeo*, "[a] receiver may . . . file progress or status reports which state the progress of the receivership, matters in litigation, the problems still to be resolved, and whatever else the receiver thinks important enough to be called to the attention of the court." *Amodeo*, 44 F.3d at 146 (citing 66 Am. Jur. 2d, *Receivers* § 349 (1973)). This Court is no expert in accounting matters, which is why qualitative statements are so helpful. Without such statements, the Court would have much difficulty in making sense of the quantitative data in the report. Moreover, qualitative statements help draw the Court's attention to certain issues in a way that quantitative statements cannot. Thus, in a sense, qualitative statements are a sort of necessary component of the Receiver's accounting.

This is not to say, however, that every qualitative statement made by the Receiver in the FSR was appropriate. As the Court made clear at oral argument, some of the Receiver's statements could have been toned down, and some are perhaps entirely unwarranted. However, those statements were not so offensive as to warrant the striking of the FSR.

    C.    <u>Whether the Court Should Remove the Receiver</u>

Next the Court considers whether to remove the Receiver from his appointed position. The basis of this request is essentially two–fold. First, he believes that the Receiver should be removed because his behavior indicates that he is not able to adequately fulfill his duty of "tak[ing] such action as necessary and appropriate to preserve" the entity defendants' assets. And, second, Pang contends that the Receiver's alleged demonstrated bias toward the SEC is a sufficient ground for removal.[4] Each of these arguments is evaluated in turn.

---

[4]In actuality, Pang's request was three-fold. Pointing to the FSR, Pang argued that the Receiver's demonstrated inability to stay within the confines of the authority is sufficient reason to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

1. <u>The Receiver's Ability to Preserve the Entity Defendants' Assets</u>

Paragraph VI.D of the TRO provides that the Receiver is to "take such action as is necessary and appropriate to preserve" the assets of the entity defendants. *See TRO*, ¶ VI.D. Pang contends, however, that the Receiver breached this duty in two different ways. First, Pang argues that the Receiver has unnecessarily made known to the world that PEMGroup is in a distressed state. And, second, Pang contends that the Receiver has unnecessarily and inappropriately released a qualitative assessment containing "explosive and gratuitous language," which he knew would generate media attention. *See Regenstreif Decl.*, Exs. 1-8 (examples of newspaper articles that quoted the FSR).

Pang's first argument is unavailing. As Pang himself notes, the Receiver was tasked with making an "accounting" of Defendants' assets. Necessarily, then, the Receiver was required to provide an overview of the financial status of the entity defendants. Notably, the Court's order does not limit the Receiver to provide only those accountings that cast the entity defendants in a positive light. Rather, the order provides broadly that the Receiver is to provide an "accounting," which is exactly what the Receiver did. That his accounting drew attention to the entity defendants' negative financial state is nothing more than a consequence of him fulfilling that duty. It is not, however, a breach of that duty.

Pang's second argument is equally unavailing. While the Receiver likely knew that making somewhat salacious comments would generate media coverage, the Court fails to see how this is a sufficient reason for removing the Receiver from his appointed position. Certainly, the Receiver could have been more particular about what statements he publicly released. But this Court does not believe this misstep is reason to remove the Receiver.

It is quite significant to this Court that several major PEMGroup investors and Pang's own criminal defense counsel all resoundingly approve of the Receiver's appointment. *See, e.g., Duke Decl.* ¶ 3 ("Based on our experience with Mr. Mosier to date, Standard Chartered is opposed to defendant Pang's request to remove Mr. Mosier as receiver of PEMGroup. Standard Chartered supports the SEC's request that Mr. Mosier be appointed permanent receiver of PEMGroup."); *Ku Decl.* ¶ 3 (same, except from Core Tech's perspective); *Kao Decl.* ¶ 4 (same,

---

remove him. However, as the Court has already determined that the Receiver has stayed within the grant of authority, this argument is moot.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

except from Bank Sinopac's perspective); *Briones Decl.*, Ex. 1 (letter from Pang's defense counsel to the Receiver's counsel, in which defense counsel writes, "He [the Receiver] and Mike Purcell are my first choices for Receivers when needed, and I consider him a foremost expert in the receivership field."). Thus, whatever minor missteps the Receiver has thus far made are whitewashed by the support he receives from those whose interests are at stake in this action.

      2.      <u>The Receiver's Alleged Bias</u>

Put simply, Pang argues that, although the Receiver is supposed to be "an indifferent person between parties," *Booth*, 58 U.S. at 331, he has repeatedly demonstrated his bias toward the SEC. As evidence of this bias, Pang cites to at least four examples that he believes reveal that the Receiver is not acting objectively. First, Pang looks suspiciously upon the timing of the release of the FSR. Released the night before the SEC's reply brief was due in connection with Pang's attempt to dissolve the TRO, Pang speculates that the Receiver released the FSR to "assist" the SEC in this case. Second, Pang points to instances where the Receiver has corresponded with the SEC. *See, e.g., Regenstreif Decl.*, Exs. 13 & 14. These instances stand in stark contrast to the reception Pang received from the Receiver when he attempted to depose the Receiver. *See id.*, Ex. 12. Third, Pang cites to a letter from the Receiver to the SEC, which Pang believes is evidence that the Receiver is making recommendations to the SEC about its litigation strategy. *Id.* at Ex. 14. And, lastly, Pang argues that the Receiver is retaliating against PEMGroup employees that are providing support to Pang. *See Mendel Decl.* Each of these claims is reviewed in turn.

As an initial matter, the Court disagrees with Pang that the timing of the release of the FSR is suspicious. Granted, the FSR was released the night before the SEC's reply brief was due, thus potentially allowing the SEC to incorporate it into its brief. But, presumably, if the Receiver was truly trying to "assist" the SEC, then he would have released the FSR the minute after Pang filed his opposition brief. Put otherwise, the fact that the Receiver released the FSR the night before the reply brief was due actually cuts against Pang's position.

The email correspondence between the Receiver and SEC attorneys is also not nearly as suspicious as Pang makes it seem. The Court's Order authorizes the SEC to "have continuing access to inspect or copy any or all of the corporate books and records and other documents of Defendants Private Equity Management Group, Inc. and Private Equity Management Group, LLC and their subsidiaries and affiliates and continuing access to inspect its funds, property, assets and collateral, wherever located." *TRO*, ¶ XIII. For obvious reasons, in order to access

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

these books, records, and other relevant documents, the SEC would need to communicate with the person in charge of these books, records, and documents. This, therefore, explains away the disparity in communications between the Receiver and the SEC, on the one hand, and the Receiver and Pang, on the other.

So too can the Receiver's decisions to not attend a deposition and to not respond to a subpoena issued by Pang be explained away. *See Regenstreif Decl.*, Ex. 12. As evidenced by the letter Pang himself cites in support of his position, there were issues regarding whether the Receiver was ever properly served with the notice of deposition and subpoena. *Id.* There was also a dispute as to whether the notice of deposition and subpoena were in compliance with the Court's TRO. *See id.* Although these issues were brought to Pang's attention, there is nothing in the record which evidences Pang's attempts to resolve these issues. The Receiver's decisions to not attend a deposition and to not respond to a subpoena are not evidence of his demonstrated bias against Pang. If anything, these decisions only evidence his attempt to protect his own rights and to comply with the TRO.

Also, contrary to Pang's arguments otherwise, an email the Receiver sent to a DLA Piper attorney and an SEC attorney is not evidence of the Receiver's bias.[5] If anything, it is evidence that the Receiver is adequately fulfilling his duties. One of the Receiver's primary charges in this matter is to preserve the assets at issue. Obviously, in order to carry out this charge, the Receiver must have a wide range of information. As evidenced by his declaration filed in opposition to this Motion, the Receiver believed that Quon would be more likely to provide relevant information during an investigation than at a deposition. Thus, in making this recommendation to the SEC, the Receiver was not providing legal strategy to the SEC as much as he was trying to fulfill his duty.

---

[5]In that email, the Receiver writes:

Today was a significant day in the PEMGroup Receivership Estate with several breakthroughs as follows:

A. I met with the former CFO, Wilbur Quon or "Will". . . . Will was cooperative and informative and gave me a load of poignant information outlined below. This resulted in my recommendation for an information meeting with the SEC rather than a deposition[.]

*Regenstreif Decl.*, Ex. 14.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

    Lastly, the Court addresses Pang's accusation that the Receiver retaliated against Peter Paul Mendel ("Mendel") for providing a declaration in support of one of Pang's motions. Mendel testifies that on May 5, 2009, the Receiver placed him on administrative leave without pay from PEMGroup. *Mendel Decl.* ¶ 2. According to Mendel, "[t]he Receiver told me that he took this action in part because I submitted a declaration to the Court in support of Danny Pang's Motion to Dissolve the Temporary Restraining Order filed with the Court on May 4, 2009. He also indicated in that same conversation that he was not sure where my loyalties lay." *Id.* at ¶ 3. However, according to the Receiver, he placed Mendel on unpaid administrative leave "because of his expense and lack of meaningful contribution to the Receiver's efforts." *Mosier Decl.* ¶ 5. Thus, the evidence on this point is contradictory.

    3.    <u>Conclusion</u>

    On review, it appears that the Receiver has largely acted appropriately in this case. While certain instances of conduct are questionable, the Court disagrees with Pang that removal is warranted. This is particularly true upon balancing the equities in this case. There is evidence that removing the Receiver would cause the estate irreparable harm. *See Mosier Decl.* ¶ 6. There is also evidence that some of the investors, whose interests are materially affected by this litigation, resoundingly approve of his work so far. *See, e.g., Duke Decl.* ¶ 3; *Ku Decl.* ¶ 3; *Kao Decl.* ¶ 4. And, lastly, there is evidence that the Receiver is not repeating the same mistakes he has made in the past.[6] Therefore, the Court DENIES Pang's request to remove the Receiver.

    D.    <u>Whether the Court Should Amend the Preliminary Injunction</u>

    Lastly, the Court considers whether it should amend the preliminary injunction to (1) prohibit the Receiver from rendering public comments or from making any findings of fact or opining as to conclusions of law without the express written consent of the Court; (2) to require that any court filings by the Receiver be served first upon the parties and that the parties be provided at least three business days notice to request that all or any portion of said report be filed under seal. If either party requests that any portion of the report be filed under seal, the Receiver must submit that portion of the report to the Court, under seal, in order to allow the Court to rule on any objections filed by either party; and, (3) to provide equal access to

---

    [6] The Receiver recently filed his Second Status Report ("SSR"). Unlike the FSR, the SSR is devoid of "salacious comments." It thus appears that the Receiver has already begun to correct some of his questionable behavior.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

2
LINK #57

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 2, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

information to all parties and to refrain from engaging in ex parte communications with either party to the litigation or from excluding one party from any meetings or interviews that may be conducted by the Receiver, or his agents, investigators or attorneys.

      The Court finds these requests to be unreasonable at this time. If the Court were to amend the preliminary injunction to include these requests, the Receiver would likely be hindered in his attempts to carry out his charges. Accordingly, the Court denies Pang's request.

III.    Conclusion

      Based on the foregoing, the Court DENIES Pang's Motion to Remove the Receiver in its entirety.