O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#64

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

Attorneys Present for Plaintiff(s):　　　　Attorneys Present for Defendant(s):

　　　　Not Present　　　　　　　　　　　　　　Not Present

**Proceedings:**　　(In Chambers) Order Denying Danny Pang's Motion to Amend Order Freezing Assets to Release Attorney's Fees and Living Expenses

　　Pending before the Court is Danny Pang's Motion to Amend Order Freezing Assets to Release Attorney's Fees and Living Expenses. The Court heard oral argument on this matter on June 29, 2009. After considering the moving and opposing papers, as well as all oral argument, the Court DENIES Danny Pang's Motion.

I.　　Background

　　This Motion arises out of an action filed by plaintiff Securities and Exchange Commission (the "SEC") against defendants Private Equity Management Group, Inc. ("PEMG, Inc."), Private Equity Management Group, LLC ("PEMG") (collectively, "PEMGroup"), and Danny Pang ("Pang"). The factual and procedural background of this case is set forth more fully in a prior opinion concerning whether the Court should grant the SEC's application for preliminary injunction, familiarity with which is assumed.

　　On April 27, 2009, the Court granted the SEC's ex parte application for Temporary Restraining Order ("TRO"). Among other things, the TRO contained the following order:

> that, except as otherwise ordered by this Court, an immediate freeze shall be placed on all monies and assets in whatever form such assets may exist and wherever located (with an allowance for necessary and reasonable living expenses to be granted only upon good cause shown by application to the Court with notice

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#64

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

to and an opportunity for the Commission to be heard) in all accounts at any bank, financial institution, brokerage firm, or Internet or "e-currency" payment processor, all certificates of deposit, and other funds or assets, such as personal or real property, held in the name of, for the benefit of, or over which account authority is held by Defendants Private Equity Management Group, Inc., Private Equity Management Group, LLC and Danny Pang or any trust, partnership, joint venture, person or entity affiliated with them (including subsidiaries), including but not limited to accounts at the following institutions: (1) HSBC Bank; (2) East West Bank; (3) UBS Securities; and (4) Bank of America.

*See TRO*, ¶ V.

Presently, Pang moves the Court for an order to amend what used to be the TRO but is now a preliminary injunction. Specifically, he requests that the Court release $2 million from the frozen accounts so that he can pay his personal legal expenses, and to release an additional $25,000 per month for living expenses.

II. Discussion

In support of the instant Motion, Pang makes three arguments. First, Pang attacks Paragraph 5 of the preliminary injunction in its entirety, contending that no freeze is appropriate because the SEC has failed to provide a reasonable estimate of the total amount of the possible recovery. Second, he argues that, as a matter of fundamental fairness, the Court should modify the preliminary injunction to permit Pang to spend $2 million toward his legal expenses in this case and in the pending criminal case. He further requests that this amount be allowed without prejudice so that he can file future requests if the need so arises. And, lastly, he contends that, as a matter of fairness, the preliminary injunction should be amended to allow him $25,000 per month for living expenses, so that he can pay for such things as food, water, gas, utilities, and his children's education. Each of these arguments is evaluated in turn.

A. Whether a Freeze is Appropriate

The parties do not dispute that the Court may exercise its full range of equitable powers in this case to freeze Pang's assets. *See FTC v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Co.*, 51 F.3d 982,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#64**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

987 (11th Cir. 1995). Indeed, freezing assets is a well accepted equitable remedy employed to "preserve the status quo" and is proper in actions arising under the Securities Act. *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 734-35 (11th Cir. 2005); *see also Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290, 61 S. Ct. 229, 85 L. Ed. 189 (1940). "Such relief facilitates the enforcement of any disgorgement remedy which might result from finding at trial that a violation had occurred." *SEC v. Dowdell*, 175 F. Supp. 2d 850, 854 (W.D. Va. 2001) (citations omitted).

In *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186 (3d Cir. 1990), the Third Circuit stated that "[i]f a court imposes a preliminary injunction encumbering a defendant's assets in order to protect a potential future money judgment, the court must make some attempt reasonably to relate the value of the assets encumbered to the likely value of the expected judgment." *Id.* at 198. Citing to that case, Pang argues that until the SEC provides a meaningful financial analysis or support for a specific amount to be frozen, the freeze should be lifted altogether.

While the SEC has not provided a specific accounting of the likely expected judgment, it is clear that they have nonetheless, throughout the course of these proceedings, provided meaningful financial analysis. For instance, as was discussed in the Court's order on the SEC's application for preliminary injunction, the SEC has adequately demonstrated that Defendants have committed securities fraud in connection with the sale of hundreds of millions of dollars of securities. That finding did not take place in a vacuum; it is equally applicable here as it was in that context.

Accordingly, the Court finds that the SEC has sufficiently demonstrated that a blanket asset freeze is appropriate.

B. <u>Whether the Preliminary Injunction Should be Amended to Release Attorney's Fees</u>

It is Pang's position that the Court should exercise its discretion and allow him $2 million for attorney's fees because, absent such a modification of the preliminary injunction, he will be unable to pay for an attorney. The SEC, however, contends that the Court should prohibit Pang from funding his defense with the frozen assets absent a showing that his assets are untainted by the alleged fraud. For the reasons that follow, the Court agrees with the SEC.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#64**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

As an initial matter, the Court notes that it is undisputed that this Court has discretion to forbid or limit payment of attorney's fees out of frozen assets. *See FSLIC v. Ferm,* 909 F.2d 372, 375 (9th Cir. 1990) (approving limitation on attorney's fees); *see also FTC v. World Wide Factors, Ltd.,* 882 F.2d 344, 347 (9th Cir. 1989) (observing that "courts regularly have frozen assets and denied attorney fees or limited the amount for attorney fees"). In a similar vein, the Supreme Court has held that a district court may restrain a defendant from using disputed funds to pay for attorney's fees before a final judgment on the merits has been rendered. *United States v. Monsanto*, 491 U.S. 600, 615, 109 S. Ct. 2657, 105 L. Ed. 2d 512 (1989). "These decisions recognized the importance of preserving the integrity of disputed assets to ensure that such assets are not squandered by one party to the potential detriment of another." *Ferm*, 909 F.2d at 374.

In his reply, Pang argues that the SEC is incorrectly attempting to shift the burden to him on this issue. More specifically, Pang contends that it is the SEC that has the burden to demonstrate that the funds Pang now requests are in fact tainted by the alleged fraud. What Pang neglects to realize, though, is that the SEC has already made the necessary preliminary showing. In reviewing the SEC's application for preliminary injunction, the Court required the SEC to demonstrate that Pang's assets could be traced to the alleged fraud. The SEC did just that, as evidenced by its showings that, among other things, Pang took several loans from the investors and paid himself, and entities within his control, millions in unearned commissions. Accordingly, it is now up to Pang to demonstrate that the assets he possesses are untainted by the fraud. *See SEC v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993). Pang, however, failed to do so, which is why his request must be denied.[1]

There is yet another reason why Pang's request must be denied. In making his request, Pang was required to demonstrate the reasonableness of his requested fees in light of the factors outlined in *Kerr v. Screen Extras Guild*, 526 F.2d 67, 70 (9th Cir. 1975). *See World Wide Factors*, 882 F.2d at 348. However, rather than do so, Pang instead chose to provide generalized statements about the complexity of the case. Thus, the fact that Pang's request lacks specificity is a sufficient reason in itself to deny his request. *World Wide Factors* requires more

Therefore, the Court DENIES Pang's request to amend the order to release funds for attorney's fees, but does so without prejudice. If Pang so chooses to file his request again, he is

---

[1] Perhaps, the Court would be in a better position to analyze Pang's request if he provided it with an accounting.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#64

CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

advised that he must make a showing that the assets he seeks to release are not tainted by the alleged fraud and that the fees are indeed reasonable.[2] *See Dowdell*, 175 F. Supp. 2d at 856.

    C.    <u>Whether the Preliminary Injunction Should be Amended to Release Living Expenses</u>

Courts regularly hold that they have discretion to modify the asset freeze to release funds to pay living expenses. *See Dowdell*, 175 F. Supp. at 854-55; *SEC v. McMillan*, 2006 U.S. Dist. LEXIS 89150, at *1 (D. Ariz. Dec. 7, 2006); *SEC v. Coates,* 1994 U.S. Dist. Lexis 11787, at *3-4 (S.D.N.Y. Aug. 23, 1994). In exercising this discretion, courts tend to look for evidence of the defendant's overall assets or income. *See SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427, 430 (S.D.N.Y. 2001). Where the courts have denied requests for living expenses, the defendants were found to have other sources of income or were requesting funds for luxuries, not necessities. *See id.* (finding that the defendant had voluntarily waived a $15,000 per month salary and was seeking money for a nanny, housekeeper, handyman and nurse); *see also Coates,* 1994 U.S. Dist. LEXIS 11787, at *6-7 (finding defendant failed to tell the court that the receiver was already paying monthly salaries to him and his family totaling almost $ 12,000 and that budget included lawn and pool service).

In support of his request, Pang has submitted sixteen unauthenticated exhibits that detail his monthly expenses. According to those exhibits, Pang's monthly expenses include the following:

    A.  $1,562.08 per month for continuation of Pang's Anthem Blue Cross Health Insurance;

    B.  $5,495.96 per month for Pang's Universal Life Insurance policy through AIG American General Life Insurance Company;

    C.  $2,060 for monthly tuition payments to the Eldorado Emerson Private School;

    D.  $12,854.18 per month for a home loan from Aurora Loan Services;

---

[2] To the extent Pang is concerned about revealing his litigation strategy to the SEC, he is permitted to provide reasonable estimates for *in camera* review. *See Ferm*, 909 F.2d at 374-75 (approving the use of *in camera* review when the district court had a legitimate inquiry into the reasonableness of fees to be paid out of lawfully frozen assets).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

#64

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

    E.  $1,333.75 per month for taxes on 2671 Crestview Dr.;

    F.  $200 per month for a Bayshores Community Association assessment;

    G.  $1,348.66 for the monthly assessment from Four Turnberry Place for the property at 2777 Paradise Road;

    H.  $687.42 per month for property tax assessment for property at 2777 Paradise Road;

    I.  $74.14 per month to insure a Honda Odyssey through Farmer's Insurance;

    J.  $92.83 per month to insure a Land Rover through Farmer's Insurance;

    K.  $101.36 per month to insure a Mercedes through Farmer's Insurance;

    L.  $78.08 per month to insure a Toyota Prius through Farmer's Insurance;

    M.  $150.71 per month for Orkin Pest Control;

    N.  $243.86 per month for Time Warner Cable;

    O.  $240 per month for ASF International. Anaheim Hills Martial Arts Academy; and,

    P.  $830.25 per month for three different homes, all of which are located on Crestview Drive, to be paid to Southern California Edison.

*See Regenstreif Decl.*, Exs. 1-16.[3]  In total, Pang's monthly expenses appear to be approximately $27,000.

    In determining whether this request is reasonable, two things are of note.  First and foremost, the requests in themselves are facially unreasonable.  Pang essentially asks the Court

---

[3] According to Pang, this amount is designed to reasonably approximate his current monthly living expenses, and is not intended to be a complete description of the expenses he incurs on a monthly basis.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**#64**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | July 9, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

to release funds that he can use to fund a lavish lifestyle that includes owning multiple homes and cars. Now while Pang may have become accustomed to living such a posh life over the years, the fact of the matter is $27,000 a month is a tremendously high overhead, an overhead that by no stretch of the imagination can be considered reasonable. Second, the bills Pang has used to substantiate his request are unauthenticated. Thus, the evidence presented by Pang is questionable at best.

And, lastly, just as Pang failed to demonstrate that the requested $2 million was not tainted with the alleged fraud, so too has Pang failed to demonstrate that the requested $25,000 per month will not be drawn from tainted funds. Accordingly, until Pang corrects these deficiencies, the Court refuses to release the funds requested.

III.   Conclusion

Based on the foregoing, the Court DENIES Pang's Motion to Amend the Order Freezing Assets to Release Attorney's Fees and Living Expenses, without prejudice.