O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|

| Wendy K. Hernandez | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order Granting in Part and Denying in Part the Receiver's Motions for Further Clarification of Scope of Appointment [213] and [217]

    Pending before the Court are the Receiver's Motions for Further Clarification of Scope and Appointment. The Court finds the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS IN PART and DENIES IN PART the Receiver's Motions.

I.    Background

    On April 24, 2009, the Securities and Exchange Commission (the "SEC") initiated an action against defendants Private Equity Management Group, Inc. ("PEMG, Inc."), Private Equity Management Group LLC ("PEMG") (collectively, the "entity defendants" or "PEMGroup"), and Danny Pang ("Pang") (all, collectively, "Defendants"). These two entities and this individual are the only named defendants in the SEC action.

    On July 2, 2009, the Court appointed Robert P. Mosier ("Mosier" or the "Receiver") as permanent receiver of PEMGroup. The Court's order states generally that Mosier will be the receiver for "all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property" that belong to, are being managed by, or in the possession of or control of PEMGroup "and any of their subsidiaries and affiliates. . . ." *See Preliminary Injunction*, § VI (Dkt. # 246). Presently, the Receiver moves this Court for an order clarifying the order appointing him. Specifically, the Receiver requests that the Court make explicit the Receiver's authority over the following seventeen entities: (1) GVEC Acquisitions Inc.; (2) Epoch Investment Holding

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

Corporation ("Epoch"); (3) Equity Resource Management (BVI) Limited ("ERM L"); (4) ERM Resource Limited ("ERM R"); (5) Genesis Voyager Equity Corporation ("GVEC"); (6) Dominical Holdings LLC ("Dominical"); (7) Genesis Voyager Equity II Corporation ("GVEC II"); (8) Genesis Voyager Assets Management ("GVAM"); (9) Genesis Voyager Equity Corporate Resources I Inc. ("GVE CR"); (10) GVEC Investments Corporation ("GVEC Investments"); (11) GVEC Resource V Inc.; (12) GVEC Resource VI Inc.; (13) GVECR I Inc.; (14) GVECR II Inc.; (15) GVECR III Inc.; (16) GVECR IV Inc.; and (17) GVECR V Inc. (collectively, the "Entities in Dispute"). Pang opposes the Receiver's request as it relates to all seventeen of the foregoing entities. Non-party TIS Wealth Management Limited ("TIS Wealth") opposes the request insofar as it pertains to GVEC and GVAM.[1]

II.     Discussion

As this Court has noted in a prior order in this case, ultimately, whether this Court grants the Receiver's motion depends on the answer to two different, but related, inquiries. First, are the Entities in Dispute separate and distinct from PEMGroup or are they PEMGroup affiliates? And, second, does the Court have the power to include the Entities in Dispute in the receivership estate? Each of these inquiries is taken up in turn.

   A.     Whether the Entities in Dispute Are Separate and Distinct From or Affiliates of the Entity Defendants

In opposition to the Receiver's motion, Pang argues that the Entities in Dispute are separate and distinct from PEMGroup. The Receiver, by contrast, contends that the Entities in Dispute are merely the alter egos of entities already within the receivership estate. Thus, he urges the Court to disregard these alter egos and bring the Entities in Dispute within the estate.

"Under federal law, a corporate entity may be disregarded in the interests of public convenience, fairness, and equity." *SEC v. Elmas Trading Corp.*, 620 F. Supp. 231, 234 (D. Nev. 1985). In applying this rule, federal courts "look closely at the purpose of the federal statute involved to determine whether it places importance on the corporate form." *Id.* (citing *Town of Brookline v. Gorsuch*, 667 F.2d 215, 220 (1st Cir. 1981); *Capital Telephone Comp. Inc. v. F.C.C.*, 498 F.2d 734, 738 (D.C. Cir. 1974)).

---

[1] On August 5, 2009, the Court denied TIS Wealth's motion to intervene. *See Order Denying TIS Wealth Management Limited's Motion to Intervene* (Dkt. # 250). Notwithstanding that order, this Court will, in ruling on the present motions, consider TIS Wealth's opposition briefs as amicus briefs.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

This case arises under the federal securities laws and is being prosecuted by the SEC, who appears before this Court, "not as an ordinary litigant, but as a statutory guardian charged with safeguarding the public interest in enforcing the securities laws." *SEC v. Mgm't Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). Based on the government's keen interest in preventing securities fraud, Court believes that in determining whether the corporate entity should be disregarded it is appropriate to apply the same "flexible approach" used by the court in *Elmas Trading Corp. See* 620 F. Supp. at 234. There, the *Elmas* court noted that the decision of whether to disregard a corporate entity does not rest on a single factor but instead often involves a consideration of a number of factors. *Id.* Some factors that the *Elmas* court found particularly significant were the presence of overlapping control persons (or their relatives) among various entities, the transference of monies between various entities, and common addresses amongst the entities. *Id.* at 234-36. Importantly, though, the *Elmas* court also seemed to suggest that the presence of only one of these factors was not, by itself, sufficient to disregard a corporate entity. *See id.* at 236-39.

Before the Court applies the foregoing factors to the Entities in Dispute, it is prudent to review exactly who controls PEMGroup.

1. Overview of The Entity Defendants

Nine individuals appear to exert significant control over the entity defendants. They are as follows:

Pang is a managing member of PEMG and, according to PEMG's Operating Agreement (which Pang signed), is a "Founding Member" of the company. *See Mosier Decl.*, Exs. A-B (Dkt. # 142). He is also the president and one of the directors of PEMG, Inc. *See id.*, Ex. C (Dkt. # 142); *Cebeci Supp. Decl.* ¶ 3 (Dkt. # 9).

Like Pang, Robert J. Anderson ("Anderson") is a managing member of PEMG and is identified as a "Founding Member" of the company in PEMG's Operating Agreement (which Anderson signed). *See Mosier Decl.*, Exs. A-B (Dkt. # 142). Also, he is currently the interim Chairman of PEMG, Inc. and, in the past, has served as PEMG, Inc.'s Chief Operations Officer. *Anderson Decl.* ¶ 1 (Dkt. # 39).

Nasar Aboubakare ("Aboubakare"), like Pang and Anderson, is identified as a "Founding Member" of PEMG in its Operating Agreement (which Aboubakare signed). *See Mosier Decl.*, Exs. B (Dkt. # 142). As for his connection with PEMG, Inc., he was the managing director of

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

PEMG, Inc. from 2002 through 2005, Chief Investment Officer of PEMG, Inc. from 2005 through August 2007, and President of PEMG, Inc. from 2006 though August 2007. *See Aboubakare Decl.* ¶ 3 (Dkt. # 56).

Wilbur Quon ("Quon") is a managing member of PEMG. *See Mosier Decl.*, Ex. A (Dkt. # 142). With respect to his connection to PEMG, Inc., the Secretary State of Nevada's Entity Details identifies him as PEMG, Inc.'s treasurer and a director on its board. *Id.*, Ex. C (Dkt. # 142). He also served as the Chief Financial Officer of PEMG, Inc. from October 8, 2004 until April 16, 2009. *Quon Decl.* ¶ 2 (Dkt. # 43). Prior to serving in that position, he was the company's Controller. *Id.* (Dkt. # 43).

Peter Paul Mendel ("Mendel") is a managing member of PEMG. *See Mosier Decl.*, Ex. A (Dkt. # 142). He is also an employee of PEMG, Inc., *Mendel Decl.* ¶ 1 (Dkt. # 59), as well as its secretary and a director on its board. *See Mosier Decl.*, Ex. C (Dkt. # 142).

Leon Chan ("Chan") is a managing member of PEMG and a director of PEMG, Inc. *See id.*, Exs. A, C (Dkt. #142).

Like Chan, Todd Gillespie ("Gillespie") is a managing member of PEMG and a director of PEMG, Inc. *See id.*, Exs. A, C (Dkt. # 142).

Sandra Chang ("Chang") is a director on PEMG, Inc.'s board. *See id.* Ex. C (Dkt. # 142).

Steven A. Blair ("Blair") served as chief in-house counsel for PEMG, Inc. and PEMG. *Id.* at ¶ 23 (Dkt. # 142). He also has a dedicated executive office at PEMG, Inc. and PEMG. *Id.* (Dkt. # 142).

  2. <u>Analysis</u>

In light of the foregoing principles and overview of the entity defendants, the Court now takes up the inquiry of whether the Entities in Dispute are alter egos of the entity defendants or separate and distinct from the entity defendants, beginning first with GVEC Acquisitions Inc.

  a. <u>GVEC Acquisitions Inc.</u>

The Receiver claims that the Court should find that GVEC Acquisitions Inc. is an affiliate of the entity defendants because (1) PEMGroup control persons were appointed as the directors

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

of GVEC Acquisitions Inc.; (2) GVEC Acquisitions Inc. is listed on the Register of Members[2] for entities that are within the receivership; and (3) the Register of Members lists a director who possesses an address that is "almost identical" to PEMGroup's address in Taipei, Taiwan.

Presumably, the Receiver points to the alleged appointment of PEMGroup control persons Messrs. Pang, Quon, Chan, Anderson, Mendel, and Miss Chang in an attempt to establish the presence of overlapping control persons among various entities. *See Elmas Trading Corp.*, 620 F. Supp. at 234. As evidence of this appointment, the Receiver cites to a March 16, 2009 letter from Su-Wei Yang ("Yang"), GVEC Acquisitions Inc.'s sole shareholder, which purports to appoint the foregoing PEMGroup control persons as directors of that entity. *See Mosier Decl.* ¶ 2 & Ex. A (Dkt. # 213-3). But as Pang correctly points out, this letter appears to be incomplete, for there are signature blocks for each of the foregoing individuals, yet none of them have affixed their signature to the document. Thus, even assuming the individuals were in fact appointed, what is missing from the record is evidence that these individuals accepted that appointment and served on GVEC Acquisitions Inc.'s board. In fact, if anything, the record shows that the foregoing individuals are *not* on GVEC Acquisitions Inc.'s board. *See id.* at Ex. F (Dkt. # 213-3) (copy of GVEC Acquisition's Register of Directors,[3] which lists Yang and Kao Peng Jui-Al ("Jui-Al") as the sole directors on GVEC Acquisitions Inc.'s board).[4]

Nevertheless, there appears to be some overlap between PEMGroup employees and GVEC Acquisitions Inc. Ms. Yang is listed as a director on GVEC Acquisitions Inc.'s Register of Directors. *See Mosier Decl. in Support of Reply* ¶ 3 & Ex. B (Dkt. # 243-2). Interestingly, her address is at the care of Cheng Hao Peng ("Peng"), a current PEMGroup employee. *See id.* at ¶¶ 2-3 & Exs. A-B (Dkt. # 243-2) (employee pay history document indicating that Peng has been employed by PEMGroup since February 15, 2005). Additionally, there are several photographs of Yang with Pang that strongly suggest that their relationship transcended that of a normal business relationship. *See id.* at ¶ 4 & Ex. C (Dkt. # 243-2) (photographs of Pang and Yang); *see also Quon Decl.* ¶ 5 (Dkt. # 243-3) (confirming that Yang is the woman in the photographs attached as Exhibit C to Mosier's declaration). Thus, at all relevant times in this

---

[2] A Register of Members records the names and addresses of the shareholders of an incorporated or registered firm and the number and classes of shares held by each shareholder.

[3] A Register of Directors is a record that includes the names and residential addresses of directors of the company.

[4] This record evidences that Jui-Al resigned on February 25, 2008. Together, that resignation with Yang's 2009 resignation support an inference that no one is currently on GVEC Acquisitions Inc.'s board, rather than an inference that PEMGroup control persons are on the board.

**O**

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

lawsuit, there appears to be some connection between PEMGroup control persons and employees and GVEC Acquisitions Inc.

Moreover, there is evidence that there is a connection between GVEC Acquisitions Inc. and other PEMGroup affiliates. For instance, GVEC Acquisitions Inc. is listed on GVEC Resource II Inc.'s Register of Members. *See Mosier Decl.* Ex. B (Dkt. # 213-3); *see also Order Granting the Receiver's Motion for Clarification* (Dkt. # 204) (finding that GVEC Resource II Inc. is a PEMGroup affiliate). GVEC Acquisitions Inc. is also listed on GVEC Resource III Inc.'s and GVEC Resource IV Inc.'s respective Registers of Members. *See Mosier Decl.* Exs. C-D (Dkt. # 213-3); *see also Order Granting the Receiver's Motion for Clarification* (Dkt. # 204) (finding that GVEC Resource III Inc. and GVEC Resource IV are PEMGroup affiliates).

In addition to the foregoing, there also is evidence that one of GVEC Acquisitions Inc.'s two directors shared a common address with PEMGroup. In his moving papers, the Receiver points out that the address listed on GVEC Acquisitions Inc.'s Register of Directors for former director Kao Peng Jui-Al is 9-F, No. 76 Tun Hua S. Road Sec. 2, Taipei, Taiwan, China. *See Mosier Decl.*, Ex. F (Dkt. # 213-3); *Quon Decl.* ¶ 4 (Dkt. # 243-3). Apparently, this was the former address of PEMGroup. *Quon Decl.* ¶ 4 (Dkt. # 243-3).

On review, the Court finds that the Receiver has presented sufficient evidence to demonstrate that GVEC Acquisitions Inc.'s operations are intertwined with those of Defendants and other entities already within the receivership. Accordingly, GVEC Acquisitions Inc. is properly considered a PEMGroup affiliate.

           b.      <u>Epoch Investment Holding Corporation</u>

According to the Receiver, several PEMGroup control persons served as directors of Epoch. And indeed they did. As evidenced by Epoch's Certificate of Incorporation, Pang, Anderson, and Quon sat on Epoch's board of directors at all relevant times. *See Mosier Decl.* ¶ 8 & Exs. G-H (Dkt. # 213-3). This Certificate also shows that GVEC Acquisitions Inc. is Epoch's sole shareholder. *Id.* at ¶ 8 & Ex. G (Dkt. # 213-3). To further bolster his position, the Receiver has produced evidence which shows that PEMGroup control persons Quon and Mendel had authority to transfer funds held by Epoch. *Id.* at ¶ 11 & Ex. J (Dkt. # 213-3).

The Receiver has also produced other evidence that further supports his position. Specifically, the Receiver has adduced documents which show that Epoch is listed on the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

Register of Members for three entities that the Court has already determined are affiliates of Defendants.  *See id.* at ¶¶ 3, 4, 5, 8, 9 & Exs. B, C, D, G, H (Dkt. # 213-3).

In summary, there is evidence that PEMGroup control persons served as directors of Epoch at all relevant times.  Some of these PEMGroup control persons also had authority to transfer funds from Epoch.  Moreover, there is an undeniable link between Epoch and other PEMGroup affiliates.  For these reasons, the Court finds that the Receiver has presented sufficient evidence to demonstrate that Epoch's operations are intertwined with that of PEMGroup to such an extent that Epoch is properly considered a PEMGroup affiliate.

        c.        Equity Resource Management (BVI) Limited

The Receiver also seeks authority to control ERM L.  In support of this request, the Receiver points to ERM L's Register of Directors, which evidences that PEMGroup control persons Anderson and Aboubakare exclusively comprise this entity's board of directors.  *See Mosier Decl.* ¶ 12 & Ex. K (Dkt. # 213-3).  The Receiver also points out that one of ERM L's three members has an address that exactly matches PEMGroup's United States address.  *Id.* (Dkt. # 213-3).

Furthermore, another PEMGroup control person, Chan, served either as a director, officer, trustee, manager, employee, or representative of ERM L.  *See id.* at ¶ 10 & Ex. I (Dkt. # 213-3).  Indeed, as evidenced by a resignation letter drafted by Chan's counsel, Chan, on May 1, 2009, resigned from any position he held or may have held with ERM L.  Pang argues that the Court should not place too much weight on this resignation, for, by its own terms, the letter extends to "any such entities that are not or may not be known to Leon Chan but are directly or indirectly affiliated with [the entities listed in the letter] . . . and any positions at any such entities to which Mr. Chan may have been appointed, whether with or without his knowledge or authorization."  *See id.* (Dkt. # 213-3).  Thus, Pang argues, the letter's breadth and generality suggest that the citation to ERM L is nothing but a "stray reference."  However, the Court disagrees.  Chan and his counsel specifically referenced ERM L in the letter, thus indicating that they were well-aware of Chan's involvement with ERM L.

In summary, while there is not evidence of any intermingling of funds between ERM L and PEMGroup, the Court nevertheless finds that because ERM L's board is comprised entirely of PEMGroup control persons and because one of its three members is an affiliate of PEMGroup, the Receiver has adequately demonstrated that ERM L is a PEMGroup affiliate.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

        d.        <u>ERM Resource Limited</u>

There is also sufficient evidence demonstrating that ERM R is a PEMGroup affiliate. Beginning first with an analysis of who can exert control over ERM R, ERM R has four board members. *See Mosier Decl.* ¶ 12 & Ex. K (Dkt. # 213-3) (Register of Directors). Three of these positions are occupied by PEMGroup control persons. *See id.* (Dkt. # 213-3). Put otherwise, there is significant overlap between ERM R's board and PEMGroup. Furthermore, the same Chan resignation letter evidences that, just as Chan resigned from his post with ERM L on May 1, 2009, so too did he resign from his post with ERM R. *See id.* at ¶ 10 & Ex. I (Dkt. # 213-3).

The Receiver has also produced evidence that on at least two separate occasions, Pang, Quon, Mendel, and Anderson executed fund transfers from PEMGroup to ERM R. *See id.* at ¶ 14 & M (Dkt. # 213-3). Additionally, ERM R's Taipei location is listed on PEMGroup's very own website as PEMGroup's Taipei office. *Id.* at ¶ 6 & E (Dkt. # 213-3).

On review, the Court finds that the Receiver has presented sufficient evidence to demonstrate that ERM R's operations are intertwined with those of Defendants. Accordingly, it is properly considered a PEMGroup affiliate.

        e.        <u>Genesis Voyager Equity Corporation</u>

In contrast to those entities discussed above, it is not so clear whether GVEC is an affiliate of PEMGroup. In an attempt to persuade this Court to include GVEC within the receivership estate, the Receiver cites to two different private offering memorandum ("POM") issued by GVEC in relation to two separate funds. According to the Receiver, the first memorandum, which was issued in connection with an offering for GVEC's Genesis Growth Income Preferred Shares fund (the "PS-G1" fund), lists Aboubakare and Anderson as directors of GVEC. *See Mosier Decl.* ¶ 15 & Ex. N (Dkt. # 213-3). There are, however, two problems with this argument. First, the evidence cited by the Receiver actually appears to cut against his position. The Receiver cites to a few pages he selected from the PS-G1 POM. *See id.* (Dkt. # 213-3). However, a review of the entire PS-B1 POM shows that, contrary to the Receiver's belief otherwise, two individuals *not* connected to PEMGroup are the directors of GVEC. As an amicus curiae points out, the PS-G1 POM lists only Chang Ping Tsao and Wang Nai Tung under the header "Company Directors." *See Palin Decl.* Ex. A at p. 22 (Dkt. # 220).[5] Aboubakare's

---

[5] Ordinarily, amicus curiae are non-parties who can only provide general information and assistance to the Court. *See New England Patriots Football Club, Inc. v. Univ. of Colo.*, 592 F.2d 1196, 1198 n.3 (1st Cir. 1979). Consequently, courts often decline to consider evidence submitted by an amicus curiae.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

and Anderson's names, by contrast, are found under the sub-header "Manager." *See id.* at p. 23 (Dkt. # 220). Thus, contrary to the Receiver's arguments otherwise, PEMGroup control persons apparently do not serve as directors of GVEC.

The second problem with the Receiver's argument is that, even assuming Aboubakare and Anderson are directors of GVEC, the PS-G1 POM suggests there are at least five, if not seven, directors. Ultimately, though, whether five or seven directors serve on the GVEC's board is besides the point, for what matters is the fact that regardless of how many directors GVEC has, only a minority of them – two to be specific – are PEMGroup control persons. Accordingly, given that PEMGroup control persons occupy only a minority of the seats on the board, it is unlikely that they can exert considerable control over GVEC.

Serious questions also exist with respect to the second POM submitted by the Receiver. That POM was issued in relation to GVEC's Preferred Shares B-1 fund (the "PS-B1" fund). Again, the Receiver points to pages from the POM which he claims are evidence that Aboubakare and Anderson are directors of GVEC. *See Mosier Decl.* ¶ 15 & Ex. N (Dkt. # 213-3). At first glance, these pages support the Receiver's position, for they clearly list Anderson's and Aboubakare's titles as directors. *See id.* (Dkt. # 213-3). However, the Receiver's citation to these pages is misleading. As evidenced by a complete copy of the POM, which was provided to this Court not by the Receiver but by an amicus curiae, Anderson's and Aboubakare's names appear under a section titled "The Manager and the Advisor" and a sub-header titled "Manager." *See Palin Decl.* Ex. B at p. 55 (Dkt. # 220). Thus, while "director" does appear next to Anderson's and Aboubakare's names, the fact that their names appear under the aforementioned section header and sub-header strongly suggests that Aboubakare and Anderson are directors of the Manager, not GVEC.

In addition to there being serious questions regarding the Receiver's arguments relating to control persons, there also are serious questions concerning whether GVEC and PEMGroup commingled funds. In fact, there is evidence that the Receiver previously admitted that he was not aware of any assets being improperly transferred into or out of the PS-B1 fund. See *Palin Decl.* ¶ 5 (Dkt. # 220). In an attempt to establish intermingling of funds, the Receiver proffers a declaration, in which Quon testifies: "[GVEC] was the original entity that PEMGroup used to solicit investor funds. GVEC's operations and accounting were conducted from PEMGroup,

---

*See, e.g., High Sierra Hikers Ass'n v. Powell*, 150 F. Supp. 2d 1023, 1045 (N.D. Cal. 2001) ("Amici are not parties and cannot introduce evidence."). Nevertheless, as the evidence provided by the amicus curiae in this case is, in a sense, the same evidence produced by a party, the Court chooses to exercise its discretion to consider it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

while PEMGroup collected management fees from GVEC." *Quon Decl.* ¶ 9 (Dkt. # 243-3). While this evidence demonstrates that PEMGroup's operations are intertwined with GVEC's, the Court nevertheless declines to consider it. It is well established in this circuit that this court has discretion to consider "new" evidence submitted in a reply. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). In this case, the Receiver could have easily submitted this testimony in his moving papers. He, however, chose not to, instead opting to produce the evidence in his Reply, thereby depriving Defendants of a chance to respond to it. This is simply unacceptable, particularly in light of the fact that the Court has already admonished the Receiver once before for improperly submitting new evidence in his Reply. Accordingly, the Court declines to consider this evidence.

For the foregoing reasons, the Court finds that the Receiver has not presented sufficient evidence to establish that GVEC is a PEMGroup affiliate. Accordingly, the Receiver's Motions are denied, without prejudice, to the extent they relate to GVEC.

### f. Dominical Holdings LLC

As Pang correctly notes in his opposition, the showing the Receiver makes with respect to Dominical is "far more extensive than any other showing made in connection with the other entities at issue."[6] For instance, Pang and Quon serve as managers of Dominical. *See Mosier Decl.* ¶ 16 & Ex. O (Dkt. # 213-3). There is also evidence that the vast majority of Dominical's members are PEMGroup control persons. *See id.* (Dkt. # 217-3). Moreover, Pang himself is listed as a 40% owner. *See id.* (Dkt. # 213-3).

In addition to the foregoing, there is evidence that Dominical loaned millions of dollars to GVEC Resource II, which is an entity that the Court has already determined to be a PEMGroup affiliate. *See id.* at ¶ 18 & Ex. Q (Dkt. # 213-3). There is also evidence that Dominical and PEMGroup share a common address. *Compare id.* at ¶ 6 & Ex. E *with id.* at ¶ 16 & Ex. O (Dkt. # 213-3).

In summary, there is evidence that there is significant overlap amongst the control people of PEMGroup and Dominical, commingling of funds between PEMGroup affiliates and Dominical, and it appears that PEMGroup and Dominical share a common address.

---

[6] Pang also argues that this type of showing should serve as the benchmark for all of the entities at issue. The Court, however, disagrees. As noted above, in light of the interests at stake and the present statutory scheme, a more "flexible" approach is appropriate. *See Elmas Trading Corp.*, 620 F. Supp. at 234.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

Accordingly, the Court finds that because the Receiver has established that Dominical's operations are significantly intertwined with PEMGroup's, Dominical is properly considered a PEMGroup affiliate.

      g.     <u>Genesis Voyager Equity II Corporation</u>

The Receiver also seeks to bring GVEC II within the receivership. In support of this request, the Receiver first points to GVEC II's Register of Directors, which confirms that, at one point, Chan, Aboubakare, and Anderson were the sole directors of GVEC II. *See Mosier Decl.* ¶ 1 & Ex. A (Dkt. # 217-3).[7] However, since August of 2006, only one PEMGroup control person – Anderson – has occupied a position on the three-seat board of directors. *See Mosier Decl.* ¶ 1 & Ex. A (Dkt. # 217-3). Nevertheless, there still appears to be a significant presence of PEMGroup control persons running GVEC II. Indeed, in addition to Anderson acting as a director of GVEC II, Quon acts as its chief financial officer, and Mendel is its secretary. *See id.* at ¶¶ 1-2 & Exs. A-B (Dkt. # 217-3).

In addition to the foregoing, there is also evidence that GVEC II and PEMGroup share a common address. *See id.* at ¶ 6 & Ex. E (Dkt. # 217-3). Also, there is evidence that PEMGroup control people, such as Quon, had authority to transfer funds from PEMGroup to GVEC II. *See, e.g.*, *id.* at ¶ 13 & Ex. L (Dkt. # 217-3).

In light of the significant presence of PEMGroup control people acting as a director and officers of GVEC II, the common address shared by PEMGroup and GVEC II, as well as the intermingling of funds between the two, the Court finds that GVEC II is properly considered a PEMGroup affiliate.

      h.     <u>Genesis Voyager Assets Management</u>

In support of his position that GVAM is a PEMGroup affiliate, the Receiver cites to three pieces of evidence. The first is a document which shows that Aboubakare and Anderson currently occupy two of the four seats on GVAM's board of directors. *See Mosier Decl.* ¶ 14 & Ex. M. (Dkt. # 217-3). The second piece of evidence cited to by the Receiver is Chan's resignation letter, in which Chan resigns from "any and all positions as a director, officer, trustee, manager, employee, or otherwise" of GVAM. *See id.* at ¶ 11 & Ex. J (Dkt. # 217-3).

---

[7] To be sure, the Register of Directors actually lists Leon Chang, not Leon Chan, as a director. However, Quon has confirmed that Leon Chang is in fact Leon Chan. *See Quon Decl.* ¶ 6 (Dkt. # 243-3).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

The final piece of evidence the Receiver relies on is a document which indicates that GVAM and PEMGroup share a common address. *See Mosier Decl.* ¶ 14 & Ex. M. (Dkt. # 217-3).

Admittedly, there is not any evidence that GVAM and PEMGroup commingled funds, nor is there evidence that PEMGroup control members owned GVAM. Nevertheless, as noted above, there is evidence that half of GVAM's board is comprised of PEMGroup control persons, as well as evidence that GVAM shares a common address with PEMGroup. *See Mosier Decl.* ¶ 14 & Ex. M. (Dkt. # 217-3). Moreover, the fact that Chan explicitly mentions GVAM in his resignation letter further confirms the link between GVAM and PEMGroup. For these reasons, the Court finds that the Receiver has produced sufficient evidence that GVAM is properly considered a PEMGroup affiliate.

I.  Genesis Voyager Equity Corporate Resources I Inc.

In support of his request to bring GVE CR into the receivership estate, the Receiver has provided the Court with GVE CR's Register of Directors, which indicates that Quon, Gillespie, and Mendel occupy three of the four seats on GVE CR's board of directors, as well as GVE CR's Register of Members, which indicates that PEMG Lux LLC is its sole member. *See Mosier Decl.* ¶ 15 & Ex. N (Dkt. # 217-3).[8] The Register of Directors also shows that Quon, Gillespie, and Mendel list PEMGroup's address as their addresses.

Pang makes two arguments in his opposition brief why this entity should not be included within the receivership estate. First, he contends that there is an absence of commingling of funds between GVE CR and PEMGroup. The Receiver argues, however, that this is not true. In support of this position, he produces Quon's testimony, in which Quon states that PEMGroup created GVE CR and set-up GVE CR from PEMGroup's offices, which included paying the set-up costs for these entities. *See Quon Decl.* ¶ 11 (Dkt. # 243-3). However, for the reasons discussed above, the Court declines to consider it. *See Provenz*, 102 F.3d at 1483.

Pang also argues that the fact that Quon, Gillespie, and Mendel list PEMGroup's address as each individual's own address is irrelevant. However, where, as here, the majority of an

---

[8] In his reply, the Receiver clarifies that PEMGroup formed PEMGroup Lux LLC, producing evidence establishing such. *See Quon Decl.* ¶ 12 (Dkt. # 243-3). As this evidence is being presented to rebut a claim made by Pang in his opposition, the Court does not deem to it be "new" evidence within the meaning of *Provenz*. *See Provenz*, 102 F.3d at 1483. Accordingly, the Court considers it in ruling on these motions. Furthermore, in light of that evidence, it is clear that PEMGroup Lux LLC is properly considered a PEMGroup affiliate.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

entity's directors share a common address with the entity defendant, certainly a reasonable inference can be made that a link exists between the entity in dispute and the entity defendant. Thus, this evidence is in fact relevant.

Based on the foregoing, the Court finds that the Receiver has produced sufficient evidence to support a finding that GVE CR is a PEMGroup affiliate. The evidence shows that three out of four of GVE CR's directors are PEMGroup control persons, all of whom share a common address with PEMGroup. The evidence also shows that GVE CR is owned by another PEMGroup affiliate. Accordingly, GVE CR is properly considered a PEMGroup affiliate.

j. <u>GVEC Investments Corporation</u>

The Court next considers the Receiver's request for a determination that GVEC Investments is a PEMGroup affiliate. In support of this request, the Receiver cites to GVEC Investments' Register of Directors, which lists Chan as its sole director, as well as its president, chief financial officer, and secretary. *See Mosier Decl.* ¶ 16 & Ex. O (Dkt. # 217-3). As further support, the Receiver cites to GVEC Investments' Register of Members, which lists GVEC Acquisitions Inc. as its sole member, *see id.* (Dkt. # 217-3), and two documents which evidence commingling of funds between PEMGroup and GVEC Investments. *See id.* at ¶ 17 & Ex. P (Dkt. # 217-3).

Based on the foregoing, the Court finds that GVEC Investments is a PEMGroup affiliate. The fact that, at all relevant times, a PEMGroup control person was the sole director of GVEC Investments shows an overlap of control persons among PEMGroup and GVEC Investments. Notably all significant officer positions were also occupied by this same PEMGroup control person. Furthermore, GVEC Investments' sole member is an entity that this Court has determined to be a PEMGroup affiliate. And, lastly, the fact that PEMGroup was paying professional fees owed by GVEC Investments to another entity further demonstrate that PEMGroup's and GVEC Investment's operations were intertwined.

k. <u>GVEC Resource V Inc. And GVEC Resource VI Inc.</u>

The foregoing reasoning equally applies to the next two entities the Court considers: GVEC Resource V Inc. and GVEC Resource VI Inc. As evidenced by their Registers of Directors, Chan, Anderson, Quon, and Mendel exclusively comprise each of these entities' respective boards of directors. *See Mosier Decl.* ¶ 18 & Ex. Q (Dkt. # 217-3). These four men also serve as these entities' respective presidents, vice presidents, chief financial officers, and

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

secretaries. *Id.* (Dkt. # 217-3). Moreover, each entity's sole respective member, as evidenced by their respective Registers of Members, is a PEMGroup affiliate. *Id.* (Dkt. # 217-3). Thus, not only is there an overlap in control persons among PEMGroup and GVEC Resource V Inc. and GVEC Resource VI Inc., these entities also are owned by a PEMGroup affiliate.

There is also evidence of commingling of funds. As was the case with GVEC Investments, it appears that PEMGroup is paying professional fees owed by GVEC Resource V Inc. and GVEC Resource VI Inc. to another entity. *See id.* at ¶ 19 & Ex. R (Dkt. # 217-3). This further shows that PEMGroup's operations are intertwined with the operations of GVEC Resource V Inc. and GVEC Resource VI Inc. Accordingly, for the foregoing reasons, the Court finds that GVEC is a PEMGroup affiliate.

> l. <u>GVECR I, Inc., GVECR II Inc., GVECR III Inc., GVECR IV Inc., GVECR V Inc.</u>

The last entities the Court considers are GVECR I Inc., GVECR II Inc., GVECR III Inc., GVECR IV Inc., and GVECR V Inc. Each of these entities are structured in the exact same manner. That is, each entity has as its sole member PEMGroup Lux LLC. *See Mosier Decl.* ¶ 20 & Ex. S (Dkt. # 217-3). Additionally, each entity's board of directors is comprised of four directors, three of whom are PEMGroup control persons. *See id.* (Dkt. # 217-3).[9]

Based on the record before it, the Court finds that the Receiver has produced sufficient evidence to support a finding that these five entities are PEMGroup affiliates. The evidence shows that three out of four of these entities' directors are PEMGroup control persons. Also, the evidence shows that these entities are owned by another PEMGroup affiliate.

> B. <u>Whether the Court Has Power to Include the Property of the Entities in Dispute in the Receivership Estate</u>

Simply because sixteen out of the seventeen Entities in Dispute are PEMGroup affiliates does not necessarily mean that the Court has the power to include their property in the receivership estate.[10] Indeed, despite enjoying "wide discretion" when fashioning relief and

---

[9] The Receiver has also submitted evidence that PEMGroup has paid professional fees that GVECR III owes to another entity. *See id.* at ¶ 21 & Ex. T. While the sum of money paid by PEMGroup is not great – it was, after all, only $67.58 – the evidence nevertheless demonstrates a commingling of funds.
[10] Because the Court has determined that the Receiver has not produced sufficient evidence to establish that GVEC is a PEMGroup affiliate, there is no need to include GVEC in this part of the Court's

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

protective measures, this Court may only include the property of a non-party entity in its receivership order if "the non-party meets the minimum contacts standard set out in *International Shoe* and receives actual notice and an opportunity for a hearing." *In re San Vicente Medical Partners, Ltd.*, 962 F.2d 1402, 1406-08 (9th Cir. 1992).

There is uncontroverted evidence that ERM L, ERM R, GVE CR, GVECR I Inc., and GVECR IV Inc. are owned by entities that are located within this judicial district. Thus, the necessary minimum contacts exist with respect to those entities. There is also uncontroverted evidence that the businesses of GVEC Acquisitions Inc., Dominical, GVEC II, and GVAM are at least partly run from within this judicial district. This fact supplies the necessary minimum contacts for those entities. And, lastly, there is uncontroverted evidence that the transfer of funds to Epoch, GVEC Investments, GVECR II Inc., GVECR III, Inc., GVECR V Inc., GVEC Resource V, and GVEC Resource VI originated from this judicial district. As these entities' involvement in this case is based largely upon Defendants' ability to transfer funds to and from these entities, these transactions provide the necessary minimum contacts.

As for whether exercising jurisdiction over the entities' property is consistent with "traditional notions of fair play and substantial justice," *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)), clearly it is. As the Court has noted before, the burden of litigating in California is not too great on the Entities in Dispute. In fact, the opposite appears to be true. The vast majority of the main players in the entities' governance structure are already playing active roles in the underlying litigation, and they have not once expressed any concern regarding the inconvenience of litigating in this forum. If anything, it seems that it would actually be inconvenient to these individuals if this matter was not litigated in this forum.

Also, despite any arguments to the contrary, the entities have received notice of this action, thus satisfying procedural due process. *See Shaffer*, 433 U.S. at 206 (observing "that property cannot be subjected to a court's judgment unless reasonable and appropriate efforts have been made to give the property owners actual notice of the action"). This is true despite the fact that the Entities in Dispute were not named as parties in the SEC action. As the Ninth Circuit has explained, "notice is satisfied when 'the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other.'" *G.F. Co. v. Pan Ocean Shipping Co.*, 23 F.3d 1498, 1503 (9th Cir. 1994) (citation omitted) (discussing notice in the Federal Rule of Civil

analysis.

**O**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-2901 PSG (Ex) | Date | August 10, 2009 |
|---|---|---|---|
| Title | Securities and Exchange Commission v. Private Equity Management Group, Inc. | | |

Procedure 15 context). Thus, given the strong link between PEMGroup and the Entities in Dispute, the Court finds that the institution of an action against Defendants served to provide notice of the litigation to the Entities in Dispute.

III.   Conclusion

Based on the foregoing, the Court GRANTS IN PART the Receiver's Motions and, accordingly, finds that the following entities are affiliates of PEMGroup for purposes of application of this Court's preliminary injunction:

- A. GVEC Acquisitions Inc.;
- B. Epoch Investment Holding Corporation;
- C. Equity Resource Management (BVI) Limited;
- D. ERM Resource Limited;
- E. Dominical Holdings LLC;
- F. Genesis Voyager Equity II Corporation;
- G. Genesis Voyager Assets Management;
- H. Genesis Voyager Equity Corporate Resources I Inc.;
- I. GVEC Investments Corporation;
- J. GVEC Resource V Inc.;
- K. GVEC Resource VI Inc.;
- L. GVECR I Inc.;
- M. GVECR II Inc.;
- N. GVECR III Inc.;
- O. GVECR IV Inc.; and,
- P. GVECR V Inc.

**IT IS SO ORDERED.**